COMMONWEALTH vs. KENNETH DAVIDSON.

No. 87-246.

Middlesex.    September 11, 1989. — October 24, 1989.

Present: ARMSTRONG, CUTTER, & FINE, JJ.

*Motor Vehicle,* Operating under the influence. *Constitutional Law,* Blood
   test. *Waiver. Search and Seizure,* Consent to blood test. *Evidence,* Blood
   alcohol test. *Practice, Criminal,* Duplicitous convictions.

A criminal defendant on trial for operating a motor vehicle while under the
   influence of alcohol, and who was so intoxicated when arrested that he
   could not voluntarily waive his Miranda rights, was held, nonetheless,
   to have consented at that time to breathalyzer and blood tests under the
   provisions of G. L. c. 90, § 24 (1)(*e*) & (*f*). [847-850]
In a criminal case, motor vehicle homicide convictions were duplicative of
   manslaughter convictions, and the indictment for the lesser-included
   offenses was dismissed. [850]

INDICTMENTS found and returned in the Superior Court De-
partment on March 7, 1986.

The cases were tried before *Robert A. Barton,* J.

*Patricia A. O'Neill,* Committee for Public Counsel Services,
for the defendant.

*Emily J. Gould,* Assistant District Attorney, for the Com-
monwealth.

ARMSTRONG, J.   Following the deaths of two persons whose
car was struck from the rear by the defendant's car, the defend-
ant was convicted of two counts of manslaughter and two
counts of vehicular homicide. There was abundant evidence
that the defendant was intoxicated — that he had been drinking
in the hours before the accident, that his car was travelling
erratically and at high speed, that his breath smelled strongly
of alcohol, that his voice was "thick-tongued," his eyes glassy,
and his gait wobbly, that he failed a field sobriety test, and
that his breathalyzer readings (.25 and .21) and blood test reading

(.22) were substantially in excess of the statutory standard (.10) for a presumption that he was under the influence of intoxicating liquor. G. L. c. 90, § 24(1)(*e*), as amended through St. 1980, c. 383, § 1.[1]

Before trial, in response to a motion to suppress various statements the defendant made to police officers at the accident scene and during booking, the judge excluded all such statements based on "overwhelming evidence of [the] defendant's high degree of intoxication," from which the judge concluded that the "statements were not voluntary and the product of a rational intellect and a free will and that the defendant was too intoxicated to have voluntarily, knowingly and intelligently waived his Miranda rights."

At trial the defendant objected to the admission in evidence of the breathalyzer and blood test results on the ground that the defendant had not been informed prior to electing to take the tests that the accident victims had died.[2] It was conceded, however, that the police officers did tell the defendant that he was being charged with operating under the influence of intoxicating liquor, and it is inferable that the defendant must have known from the crushed condition of the victims' car that they at least suffered serious bodily injury.[3] The judge overruled the objection, and this ruling is the principal claim of error.

The defendant casts his contention on appeal somewhat differently from his objection below: there, he focused on the officers' failure to inform him of the full seriousness of the charges; on appeal, he focuses on an alleged contradiction

[1] Paragraph (*e*) of subdivision (1) was amended after the accident by St. 1986, c. 620, § 11, without altering the statutory standards for presumptions of not being under the influence (.05 or below) and being under the influence (.10 or above).

[2] The judge observed that the defendant should have raised any objection to the admission of the test results by way of a pretrial motion to suppress. See Mass.R.Crim.P. 15(c), 378 Mass. 884 (1979); Smith, Criminal Practice and Procedure § 1288 (2d ed. 1983). The judge appears not to have overruled the objection for that reason.

[3] The police officers indicated at trial that they would not themselves draw a conclusion as to death but would wait until the medical examiner had pronounced death.

between the pretrial finding that he was too intoxicated to waive his Miranda rights and the judge's implied finding during the trial that he had given his consent to the breathalyzer and blood tests, as required by G. L. c. 90, § 24(1)(*e*) and (*f*). While arguably different (as to which see *Commonwealth* v. *Owens,* 402 Mass. 639, 641 [1988]), we think the defendant's objection at trial and his argument here are merely different facets of the same underlying contention: namely, the defendant cannot be deemed to have consented to the breathalyzer and blood tests because the Commonwealth cannot show that any choice he made that evening was knowing, voluntary, and intelligent.

Where there is probable cause to believe that a defendant has been operating a vehicle while under the influence of intoxicating liquor, the defendant has no constitutional right to refuse a blood test or a breathalyzer test. *Schmerber* v. *California,* 384 U.S. 757, 770-772 (1966). *Skinner* v. *Railway Labor Executives' Assn.,* 489 U.S. 602, 624-626 (1989). *Burnett* v. *Anchorage,* 806 F.2d 1447, 1449-1450 (9th Cir. 1986). *Commonwealth* v. *Angivoni,* 383 Mass. 30, 32 (1981). The right of refusal he does have stems from the statute, which requires that a test not be conducted without his consent. Typically, where a right is conferred by statute and "is not a fundamental constitutional right, we apply traditional indicia of waiver of rights." *Commonwealth* v. *Carr,* 3 Mass. App. Ct. 654, 656 (1975), citing *Commonwealth* v. *Davis,* 367 Mass. 422, 423-424 (1975). To the same effect, see *Barry* v. *Commonwealth,* 390 Mass. 285, 296 (1983), *Commonwealth* v. *Farris,* 390 Mass. 300, 305 (1983), and *Commonwealth* v. *Deeran,* 397 Mass. 136, 140-142 (1986). See also the discussion in *Spence* v. *Reeder,* 382 Mass. 398, 410-412 (1981). Traditional indicia include waiver by inaction, *Commonwealth* v. *Davis, supra* at 423; by express agreement, *Barry* v. *Commonwealth, supra* at 298; by untimely motion, *Commonwealth* v. *Deeran, supra* at 140-141; and by failure to object, *Commonwealth* v. *Carr, supra* at 656-657. Thus, "[t]he 'knowing' and 'intelligent' standard . . . applies only to a defendant's 'consent' to the actual relinquishment of [a] constitutional *right.*" *Commonwealth* v. *Deeran, supra* at 141.

It is apparent from context that G. L. c. 90, § 24(1)(*e*) and (*f*), do not contemplate voluntary consent in the constitutional sense. A drunk driving suspect who refuses a test after being advised of the automatic 120-day suspension of his driver's license for refusing is subjected to coercive pressure not normally regarded as consistent with voluntary waiver of constitutional rights. The statute, moreover, contemplates the admission in evidence of breathalyzer test results that establish presumptively the inebriated condition of the suspect or, at least, the impairment of his faculties. The purpose of the provisions regarding *actual* consent (as opposed to the implied consent established by the first sentence of § 24 [1][*f*]) seems to have been to avoid forced testing — i.e., testing by means of physical compulsion — that was thought after *Rochin* v. *California*, 342 U.S. 165 (1952), to be of dubious constitutional validity. See the discussion in *State* v. *Newton*, 291 Or. 788, 791-798 (1981). See also Lerblance, Implied Consent to Intoxication Tests: A Flawed Concept, 53 St. John's L. Rev. 39, 47 n.22 (1978).

"Implied consent" statutes typically forbid testing where the suspect refuses or withholds his consent at the scene.[4] So far as we have found, no State court has interpreted its statute to require consent or waiver in accordance with the "voluntary, knowing, and intelligent" standard applicable to waiver of important constitutional rights. Decisions suggesting the contrary are numerous. See *Bush* v. *Bright*, 264 Cal. App. 2d 788, 793 (1968); *People* v. *Doherty*, 144 Ill. App. 3d 400, 403-404 (1986); *Corum* v. *McNeill*, 716 S.W.2d 915, 917 (Mo. App. 1986); *Jensen* v. *Jensen*, 222 Neb. 23, 26-27 (1986); *Hoban* v. *Rice*, 25 Ohio St. 2d 111, 118-119 (1971); *Department of Motor Vehicles* v. *McElwain*, 80 Wash. 2d 624, 628-629 (1972). See generally 3 Erwin, Defense of Drunk Driving Cases § 33.06[5] (3d ed. 1988) and cases cited therein. See also *State* v. *Taylor*, 12 Conn. App. 427, 433-434 (1987)

---

[4] The various States' "implied consent" statutes are the product of Federal mandate. See the discussion in the Report of the Legislative Research Council Relative to Massachusetts Implementation of the National Highway Safety Act of 1966, Sen. Doc. No. 980 at 48-53 (1968).

(absent duress, apparent consent to breath test satisfies implied consent statute). Compare *State* v. *Locke*, 418 A.2d 843, 850 (R.I. 1980); *In re Kean*, 520 A.2d 1271, 1274 (R.I. 1987) (assuming without deciding that waiver of statutory right must satisfy constitutional standards).

Here there is no question that the defendant consented to the two breathalyzer tests in the customary sense of that term and that he requested the blood test when told of his right to such a test by the police. The only suggestion of nonconsent arose from doubts as to his sobriety at the time. The testing therefore complied with the statutory requirements, and the results were properly admitted in evidence.[5]

The judgments require modification, however, for a different reason. The Commonwealth concedes that the motor vehicle homicide convictions were duplicative of the manslaughter convictions. See *Commonwealth* v. *Jones*, 382 Mass. 387, 395-397 (1981). See also *Commonwealth* v. *Cerveny*, 387 Mass. 280, 289 (1982); *Commonwealth* v. *Thomas*, 400 Mass. 676, 682 (1987). Accordingly, the defendant's convictions on those two counts must be vacated and the indictment charging motor vehicle homicide dismissed. The judgments on the manslaughter convictions are affirmed.

*So ordered.*

---

[5] *Commonwealth* v. *Angivoni,* 383 Mass. 30 (1981), on which the defendant relies, was different from this case in a crucial respect: there, the police officers lacked probable cause to believe that the defendant was operating under the influence of intoxicating liquor. As breathalyzer and blood tests are deemed "seizures" for constitutional purposes, the absence of probable cause required that the seizure be justified by consent in the constitutional sense.